Good morning, Your Honors. My name is Mark Hebert, and I represent Mr. Pedregon. I'll start with the issue of the admission of Mr. Pedregon's 15-year-old prior conviction under Rule 404b. I think that the most telling part of the record is what the prosecutor said in the closing argument, which was, quote, Pedregon went back to what he knew. He went back to selling methamphetamine, something there was evidence he had done previously, end quote. And that's at page 16 of the EERs. That is propensity evidence on its face. He did it before, so he'll do it again, or so he did it again. And that takes it outside the scope of Rule 404b and puts it squarely in the prohibited area of propensity evidence, because it's also a knowledge and intent, is it not? No, Your Honor, I don't believe that it is. First of all, the district court never explained the chain of inference from one case to the other, and that's procedural error under Mions, the Ninth Circuit case, as well as Sampson and Marion, and therefore, we don't even reach that balancing test. Secondly, it's not relevant to those issues because neither knowledge of how to sell methamphetamine, which is what the government argued, not that he knew it would, that it proved that he knew it was there, but knowledge and intent were not his defenses. In other words, his --- Scalia, so it always has to show intent, does it not? Well, I think that that's the government's arguments, but I think it stems from a misreading of the Mions case, which is what the government relies on there. In Mions, the Court only said that intent was relevant, quote, at a general level, end quote, because it was an element of the defense, but that admitting evidence of prior drug dealing still required, as I quote again, a focused determination of relevance, and the Ninth Circuit reversed that 404b ruling on the ground that prior drug deals, even though they were with the same people, didn't put him on notice of the drug deals that were happening in the case that he was charged with, which he didn't participate in at all, according to him. Here, there is no such chain of inferences leading from the fact that Mr. Pedragon was involved 15 years ago in an interstate smuggling of large quantities of drugs from California to South Dakota  that he knew that those drugs were in the room that he had rented for 6 days, and that also contained the property, including the gun and the indicia of the person who had rented the room before, who was still sleeping on the couch, who was still there at the time, and who was seen sneaking into that room during the time the marshals were there and trying to remove his gun and his indicia from that same room. What other evidence is there in the record of intent other than the prior conviction? Again, the intent was not relevant to whether those drugs were his. Well, that's true, but the government has the burden to show all three elements of the crime, one of which is intent. How does the government prove that if you take away that conviction? Well, you don't prove it by using propensity evidence. You don't prove it by saying, well, he did it once before, so he'll do it again. And again, that is not the, quote, focused determination of relevance. That's not showing the chain of inferences that the cases I cited in my brief say that the district court has to show and that the government has to show to prove that the fact that he participated in a large-scale interstate drug deal years before shows that he knew that the drugs that were in that room were his. But usually the difficulty with prior convictions is that they are always, as you know, they're really propensity evidence that's been dressed up and permitted under the rules. So this question of balancing comes to the fore, so I'm looking back at how it was used in the closing argument, and I agree with you that that wasn't really used, focused just on intent, but more on propensity. Correct. So two questions come to my mind, then. I don't see there's an objection, and there's not actually an appeal with respect to improper closing argument. So why wasn't the judge's earlier instruction on the point sufficient, and why don't we look at what it was admissible for, in light of the fact that there's not an objection and there's not an appeal on your strongest issue? First of all, he did object to the admission of that 404B evidence in the first place. Earlier. Well, yes. He objected to the admission of it. He objected to the instruction. I believe he objected to the instruction. I don't know how many times he has to object to it. And in any event, my point is that the use of the propensity evidence in closing arguments is evidence of what it was actually used for. And the argument that the government made was, again, was based on a misreading of the Vaux case. They were saying, well, he knows how to sell methamphetamine. But what the Vaux case, the Vaux case was something very different. There, the defense was, I don't know how to cook meth, I don't know how to sell meth, but my wife has done both of those things in the past. Therefore, yes, there was a difference. There was evidence to show that there was knowledge in that case. As to what Your Honor is saying about the balancing test, I know that the cases don't always separate them clearly in their analysis. They're very clear again and again and again that different standards of review apply. In other words, it's de novo as to whether it's propensity versus evidence that proves the crime charged, intent, whatever. And it's de novo as to whether it's relevant to the current crime, under intent, whatever. And it's only if you get past that that you get to the balancing test. In other words, it has to be 404B evidence before you get to the balancing test of how long ago was it and how similar was the crime and so on. First part clear in all the cases.  They simply go there. But of course, they're doing it up the judge is making that decision up front in the vacuum in a way. Right. Not yet tied to these arguments. Right. But again, Mr. Hedregan never said, never argued that he didn't know how to sell methamphetamine, certainly not in terms of the much different context of a shipment from kilo quantities from California to South Dakota 15 years ago versus the individually packaged single hits made for street distribution that were found in the room next to the bin containing Villis's gun and his indicia that he was trying to sneak out of the discussion. Counsel, before you run out of time, let's assume we agreed with you that the evidence shouldn't have come in. Right. Why was it harmful error? Well, first of all, the – there was no balancing of the prejudice versus the probative value by the trial judge, and that's – that right away gets you to de novo review of that question. But that's not entirely true, because he allowed in the fact of conviction, but then later did not allow in the circumstances of that prior conviction. So obviously, the trial court was weighing under 403 the relevance and the prejudice. I would say, Your Honor, that's pretty powerful evidence that if the facts of the prior conviction are not relevant or are too prejudicial, the prior conviction to the current case, how can the fact, the mere fact that he was convicted of an unspecified drug crime in the past, how can that be 404-B? If the facts were so different and were so prejudicial, how can the actual conviction be 404-B? But I would also say he didn't balance it on the record. I'm sorry. I said you have a minute and 20 seconds left, so you might want to save. Okay. And, yeah. Okay. I'd love to hear why you think this is harmful error when you come back up. You're welcome to. You can do it now, my friend. I'll just add, in addition to what I've said, in addition to the fact it was actually used for propensity evidence, I don't see, as a defense lawyer who's done this for a long time, I don't see how a government, the government arguing he dealt drugs in the past, therefore he did it again, could possibly not be prejudicial. But I would also say that under the facts of this case, with as many people who were in that room as there were with prior tenant, who still had his gun right next to that, who was sneaking it out, who went back in alone to replace the gun when he was caught, I don't see how it could not be prejudicial when the evidence was so confused and when there were just so many people and so much activity going on in that room. And let me save my last 34 seconds for a moment. May it please the court. My name is Anne Voights and I represent the United States in this matter. If I might first address the issue of the 404B evidence. I'd like to note first that this case is in a somewhat unusual position because below defense counsel did not object to the fact that defendant was on supervised release coming in. And so as a result, it was clear to the jury that defendant had a criminal history. What the dispute was over was whether they should know what that was. And here it was not an abuse of discretion on the part of the district court to admit his prior conviction for conspiracy to distribute methamphetamine for purposes of showing intent and knowledge. But in this case, intent and knowledge weren't the key issues by any means. I understand the government still had to prove those elements, but the real question was whether who did the drugs belong to, not whether whoever did in fact possess them knew that the substance was meth or possessed it with the intent to distribute. The whole question was whose drugs were they. And I don't see how the prior conviction is in any way relevant to that issue, except on a propensity inference. It is not, but the court gave the jury a limiting instruction to which, and I'd like to note as a matter of the record, the district defense counsel did not object. In fact, the government asked for a clarification with that limiting instruction to which defense counsel ultimately agreed. That instruction told them they could only consider it for intent and knowledge and for no other purpose. And so the dispute about possession. Well, let me just be clear where I'm coming from. It might be minimally relevant under a 404B theory to intent and knowledge, but our decision in United States v. Bobbage's says when intent and knowledge are not the key issues in the case, under a 403 balancing, you have to keep the conviction out because it's so the propensity inference is so strong as to the issue that is in play that it can't come in under a 403 balancing. And I didn't see any 403 balancing analysis that the district court engaged in here. Well, I think what the district court did when it was considering the issue of what could come in to prove the conviction at the second hearing, after it had ruled that the conviction could come in, the government went back and asked for clarification about what it could use to show that. And I think the balancing is inherent in what the court let in. It let in the heavily redacted judgment. It did not let in the statement of factual basis. And ultimately what came in was that judgment presented in the testimony of a single witness, and the bulk of the testimony of the other witness, no other witness referenced his conviction. They simply discussed the fact that he was on supervised release, their actions in entering the house and in securing it. It was not the case. But I hear you concede that the conviction is not relevant on any permissible inference to the only issue that was really in play at the trial, which was who possessed the drugs, right? No, we believe it was relevant to the issues of intent and knowledge, which even if they were not actively being disputed. Put aside intent and knowledge, because I'm saying those weren't in play, okay? So you don't get the benefit of the conviction being relevant to those under Rovages. I mean, I'm just telling you that's what the case held. So are you conceding that as to the only issue that really was in play, possession, the conviction is not relevant except on a propensity basis? I think it's relevant in terms of knowledge and intent, the purposes for which it was admitted. And those were the elements as to which the government bore the burden, whether they were the core of the dispute or not, the government still bore the burden of proving them. And the district court did not abuse its discretion in admitting it for that purpose. Even if it had, however, if I could address the question that you asked about harmless error, I would like to address that briefly. First, as an initial matter, this Court has held in Romero that typically a limiting instruction does cure prejudice. And moreover here, as I said, the testimony came in briefly through the testimony of Officer Lepisko. It was not referenced by any other witness. And the central dispute was over possession. And with respect to that, I'd like to clarify some of the facts, if I might. The dispute over whether René Villa could have had the opportunity to put the drugs in defendants' belongings simply isn't supported by the record. What happened here was defendant left the house, was arrested outside of the side of the house. There were no sirens or noise to alert anyone in the house, nor was there any testimony that anybody in the house knew that the marshals were outside until Mr. Garfias, the landlord, went in, answered the knock, and let the officers in. At that point, they secured the house and they said they did so within 30 seconds of entering. And this was not a particularly large house. And if this Court looks, I believe it might be helpful to look at the final, the Government's Exhibit 19, which appears in the S.E.R. at 719. The testimony was consistent that when they found people, they moved them to the kitchen and living room, away from bedroom number one, which is where defendant had been staying. And that this was, again, consistent through the testimony of Deputy Harwell, Deputy Vieira, Officer Bolton, Probation Officer Bolton and Lopezco, that when they came in, there were marshals throughout the house. Again, this was consistent also with Mr. Garfias's testimony. Everyone was in this sort of living room kitchen area. They weren't allowed to walk around unescorted. And even the testimony of the defense, I think the defense only called one witness, but didn't that witness have some contrary testimony about how he was allowed to basically go about his business? No, he did not. What he testified to specifically was that when the marshals came, he was in the shower, that they told him he could change and go back to the kitchen. The record doesn't reflect whether he was escorted or not, but the testimony of the marshals was that they would not have let someone walk around unescorted. He agreed that everyone was staying in the kitchen and living room. And what he said was he wasn't allowed to – that they were allowed to leave when the marshals left. But the marshals were still there when the probation officers came and discovered the drugs. He also said in his testimony that he didn't put the meth in the room and that he had never seen his brothers or his mother or Garfias with methamphetamine. So ultimately, I think his testimony was helpful on the issue of the sufficiency. And finally, with respect to the timing of Renavia's attempt to remove the bins from the room, in that case, although Probation Officer Lopisco did say that she was confused as to the sequence of events, not necessarily what happened, when she said that, she was referring to where Mr. Garfias was in the house, not to when Renavia did. On redirect, she clarified that she was 100 percent sure that Renavia was trying to take the bin out after the drugs had been discovered, that is, after Officer Bolton had gone in. And the drugs themselves were found wrapped in a Ziploc bag, not in plain view, in defendant's cab, underneath his clothing, in a bag full of his belongings. So we'd submit that even if the district court erred in this case in admitting the evidence, and we don't believe that it did, we believe it was not an abuse of discretion, any error would have been harmless in this situation. Kennedy, again, if you will, how it's relevant, that is, the prior conviction to the issue of knowledge. It's relevant to show that if he possessed it, he knew what the methamphetamine was and that he knew how to distribute it. The only other evidence of distribution that came in was through the testimony of DEA agent Robinson, who testified that the bundling and the amount was consistent with an amount for distribution, but it certainly was helpful on the issue of intent to have the prior conviction. I think my question was knowledge, not intent. With intent, you've got drugs in these separate little bags, so if he or if they're his drugs, pretty much intent is already established, is it not? Intent to distribute? It is, but it certainly was relevant, and under this Court's case law in vogue, I think it is still relevant to show intent. This Court has generally in drug trafficking cases held that prior convictions are relevant both for knowledge and intent. Well, under your argument, then, because those elements are always part of the crime, basically every single prior drug conviction always comes in in every single trial, no matter what, right? No. I think in each case the district court has to go through the four-part, has to consider the four-part balancing test and has to engage. When would it ever not meet that balancing test as you just articulated it? I think there might be cases where it would be either too remote in time, whether there wouldn't be sufficient evidence that the individual had committed the prior act. 15 years, if 15 years isn't too remote in time, I'm not sure, what, it's got to be 30 years, then it can't come in? That certainly would be a strong case that it should not. In this case, however, although it was 15 years, there are cases holding that 13 years or 12 years is not too long, and under this Court's case law and other courts of appeals, this Court should consider the amount of time that he was in prison as diminishing the significance of the length of time. If the Court has no further questions, I'm happy to. All right. Thank you very much. Make that a real minute instead of a few seconds. Your Honors, at page 1 and 2 of my reply brief, I list not one defense witness, but six different witnesses, five of them government witnesses, who testified that people were free to roam at various times, that people went in and out of that room, and that people were not the multiple people who were in the house were not handcuffed, and that includes Probation Officer Belton, who said that when he took Officer Lepisko back to the room to show her the drugs, which were in plain view, they were sticking out of the bag right next to the bin with Villas's gun, that he didn't see any marshals and he didn't see Mr. Villa coming out of the room at that time, which left only one point in time when Ms. Lepisko could have seen those Mr. Villa trying to come out of the room, and that was the first time before the drugs were found. So I don't think that's correct. Next, and also the guns were not in plain view. As far as knowledge is concerned, Mr. Hedregaard never disputed that he knew what methamphetamine looked like or how to sell it. Whoever put that methamphetamine there knew both of those things. The question is who put that there. And I wish I had another 10 minutes, but I don't, so thank you. Thank you. I appreciate your rebuttal, very succinct and to the point. The case just argued of United States v. Pedregon is submitted.
judges: Zilly, McKeown, Watford